**SCHLEIER, JELLISON & SCHLEIER, P.C.**
3101 North Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

JAMES M. JELLISON, ESQ. #012763
BRADLEY H. SCHLEIER, ESQ. #011696
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jenny Ford, a single woman;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Motorola Inc., a Delaware corporation;<br>Motorola, Inc. Involuntary Severance Plan administered by Ron T. Miller, Plan Administrator,<br><br>　　　　　Defendants. | Case No.: CV 03-1271 PHX RGS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF OPENING TRIAL BRIEF** |

　　　Plaintiff Jenny Ford, by and through counsel, hereby submits her Reply in support of her Opening Trial Brief.

　　　DATED this _____ day of August, 2005.

　　　　　　　　　　　　　　　　SCHLEIER, JELLISON & SCHLEIER, P.C.


　　　　　　　　　　　　　　　　s/James M. Jellison
　　　　　　　　　　　　　　　　James M. Jellison
　　　　　　　　　　　　　　　　Bradley H. Schleier
　　　　　　　　　　　　　　　　Attorneys for Plaintiff

///
///

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Defendant Plan's Responsive Brief makes clear that the Plan wishes this Court to decide the present action based on an improper standard of review and on information that is insufficient to support the denial of benefits.  In this case, the decision to deny benefits was made (1) by an attorney for the employer, Motorola, Inc., and not by the Plan Administrator, (2) where the power to investigate and render a decision had not been delegated by the Plan Administrator, (3) upon an investigation whose true factual basis is unknown, (4) with important factual material provided by Ms. Ford having been removed from the administrative record without explanation, (5) upon a record which fails to disclose the source of information and contains no affidavits, witness statements, or evidence, (6) with shifting factual conclusions, and (7) with factual conclusions that, ultimately, support the granting of Ms. Ford's benefits.  Indeed, the Defendant Plan continues to assert that Ms. Ford resigned her employment, yet no evidence is contained in the administrative record to support this claim.  Instead, Defendant Plan ultimately concludes only that Ms. Ford notified Motorola that she had procured future employment.  Under the specific Plan terms, procurement of future employment **does not** render the employee ineligible to receive the promised severance benefit.

ERISA was enacted to help ensure that employees receive their promised benefits, not to allow employers to devise creatively deficient investigative methods to deny those benefits.  In denying Ms. Ford her benefits, the Plan abandoned its fiduciary role, conducted no legitimate investigation into Ms. Ford's claim, failed to develop a record supporting denial of the severance benefit, and even failed to analyze Ms. Ford's claim under the pertinent provisions of the Plan.

Nothing in the Defendant Plan's Responsive Brief changes the conclusion that Ms. Ford is entitled to her severance benefits.

**II.     THE *DE NOVO* STANDARD OF REVIEW APPLIES IN THIS CASE**

As stated in Ms. Ford's Opening Brief, the court reviews *de novo* an ERISA plan administrator's decision to deny benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms

of the plan." *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 976 (9th Cir. 1998). When discretion is conferred, the court generally reviews the exercise of that discretion for abuse of discretion. *Id.; see also, Lang v. Long-Term Disability Plan Of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 797 (9th Cir. 1997).

In this case, however, the Defendant Plan admits that it is both funded and administered by the same party, namely, Motorola, Inc. *See Response To Plaintiff's Opening Brief,* page 7, lls. 18 – 20. When a company adopts the dual role of being both the funding source and administrator of the plan, an inherent conflict of interest is present. *Lang*, 125 F.3d at 797. "If . . . the program participant presents 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary,' . . . a rebuttable presumption arises in favor of the participant." *Tremain*, 196 F.3d at 976. Here, Ms. Ford presented the evidence required by existing Ninth Circuit case law[1] to demonstrate that the Defendant Plan acted in a self-interested manner, namely:

- Defendant Plan continues to argue that Ms. Ford resigned - without evidence of resignation;

- Defendant Plan continues to argue that Ms. Ford resigned even after it concluded that Ms. Ford merely notified Motorola, Inc. of a *future intent to resign having obtained alternate employment*;

- Defendant Plan argues that Ms. Ford's position was not eliminated even though Ms. Ford received a July 8, 2002 written notice that she was involuntarily terminated based on a restructuring and/or reorganization;

- Even though Ms. Ford provided the July 8, 2002 written notice to Defendant Plan as part of the administrative record, Defendant Plan did not include the written termination notice as part of the record;

- Defendant Plan offers no explanation why the July 8, 2002 written termination notice is excluded as part of the administrative record and why it was not considered by the Plan Administrator;

- No documents or other evidence in the record explains why or how the July 8, 2002 termination notice was erroneous;

---

[1] *Gatti v. Reliance Standard Life Ins. Co.*, 2005 WL 1295782, p. 5 (9th Cir. 2005); *Lang v. Long-Term Disability Plan Of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 797 (9th Cir. 1997).

- The decision to deny benefits was actually made by Motorola, Inc's in-house counsel who possesses a fiduciary duty to Motorola, Inc., and no fiduciary duty to plan participants;

- Nothing in the administrative record shows that Motorola, Inc.'s in-house counsel received any specific delegation from the Plan Administrator to make the decision in this case;

- In fact, the administrative record demonstrates that the Plan Administrator never affirmatively delegated any responsibility to Motorola, Inc.'s in-house counsel;

- No witness statements, correspondence, or other evidence is contained in the administrative record to support any factual or legal conclusion reached;

- Even though Ms. Ford requested copies of all witness statements and other supporting evidence considered by the Plan Administrator while the claim was being considered, none were provided;

- The administrative record demonstrates that the Plan Administrator was brand new to the position and did not understand his fiduciary role or responsibilities;

- The administrative record reveals that an important electronic mail message from the Plan Administrator has been altered, without any explanation from the Defendant Plan;

- Even though Defendant Plan had full access and possession of Ms. Ford's General Releases, the Plan failed to include these basic documents in the administrative record;

- The Plan Administrator simply "rubber-stamped" Motorola, Inc.'s in-house counsel's conclusions without any independent review, and signed the denial letter prepared by Motorola Inc.'s in-house counsel immediately and without change;

- The original benefits denial is based on the erroneous conclusion that Ms. Ford resigned, while the denial on appeal shifts to the equally erroneous explanation that Ms. Ford's position was not eliminated – again both positions supported by no attached witness statements, documents, or any other evidence;

- The administrative record demonstrates that the Defendant Plan did not even consider that portion of the Plan documents which provides that an employee who merely states a *future intent to resign having obtained alternate employment* remains eligible for the Plan's severance benefit.

If the participant raises evidence which demonstrates a breach of fiduciary obligation - which has been overwhelmingly accomplished by Ms. Ford in this case - "[t]he plan 'then bears the burden of rebutting the presumption by *producing evidence* to show that the conflict of interest did not affect its decision to deny or terminate benefits.'" *Tremain*, 196 F.3d at 976 (emphasis added). In this case, however, the Defendant Plan has offered *zero evidence* to

4

show that its conflict of interest did not affect its decision to deny benefits. Accordingly, having failed to carry its burden of rebutting the presumption, "[the court] review[s] de novo [the] decision to deny benefits." *Id.* The *de novo* review allows the court to make its decision "without deference to the administrator's tainted exercise of discretion." *Lang,* 125 F.3d at 798. Here, the Plan Administrator's decision is not entitled to any deference and is subject to *de novo* review.

### A. The Role Of Motorola, Inc.'s In-House Counsel Demonstrates The Abandonment Of The Plan's Fiduciary Role.

Instead of presenting evidence to show that its conflict of interest did not affect its decision to deny benefits, Defendant Plan argues that Plaintiff's "chief allegation" that Motorola, Inc.'s in-house lawyer made the actual decision here is unavailing because the Plan has the power to rely on information provided by attorney, and to delegate investigative and decision-making power to those attorneys. First, while certainly an important factor, the role of Mr. Parsons in the decision-making process is not the only evidence demonstrating that the Defendant Plan abandoned its fiduciary role. Second, the role of Mr. Parsons is not as innocuous as the Defendant Plan claims.

The cases cited by Defendant Plan do not support its conclusion that Mr. Parsons' role as the decision-maker was a proper role. In *Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1531-32 (3rd Cir. 1990), the court merely concluded that it was not improper for a plan to consult with independent counsel. It is worth noting that, in *Ashenbaugh*, the plan administrator, along with a retirement committee, made all benefits decisions. *Id.* at 1518-1519. The role of the attorney in *Ashenbaugh* was merely as an advisor. *Id.* at 1531-32. Likewise, in *Hensley v. Northwest Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 997, n. 6 (9th Cir. 2001), the court merely concluded that a plan administrator *may consult* with counsel who represents both the employer and the fiduciary where there is "no evidence that any conflict influenced the benefits decision." It is important to note that in *Hensley* the plan committee did not merely adopt its attorney's conclusions – as has occurred in Ms. Ford's case – but "had input into the [denial] letter's drafting . . . was

5

informed of the issues surrounding the benefits decision and the letter at a meeting that lasted several hours, and the committee therefore was free to reject the letter and reach a different conclusion, but decided not do so." *Id.* at 996-97.

This case is far different. Here, the outside counsel made the decision to deny the benefits and simply instructed a new, untrained plan administrator on that denial decision. The record is clear on this point:

On January 29, 2003, **Motorola, Inc.'s in-house counsel**, Larry Parsons, wrote to Ron Miller, the Plan Administrator, in an electronic mail message and stated:

> Welcome to one of your new hats, the role of Plan Administrator of the Involuntary Severance Plan. I need to have you respond to a claim for benefits by an employee exited in July 2002.

*Id.* at MISP020. Thereafter, Mr. Parsons provided a fact summary stating that Ms. Ford had "resigned to take a job at Intel." *Id.*. As noted previously, in the "fact summary", Mr. Parsons does not identify the source of his information, does not specifically state that he spoke to anyone himself, does not indicate when Ms. Ford allegedly resigned, does not say when Ms. Ford was to begin her job at Intel, and does not engage in any evaluation of the Plan's provision that "current active employees of Motorola who had given advance notice of their intent to voluntarily terminate employment but who are involuntarily terminated due to the reduction in force or restructuring prior to the date of their employment would have voluntarily terminated are Eligible Employees under this Plan." *Id.* Mr. Parsons does not provide Mr. Miller with any supporting documents or witness statements. *Id.* Instead, Miller is given a letter drafted by Motorola, Inc.'s counsel denying Ms. Ford her severance benefits. *See, Id.,* MISP020-23. Mr. Parsons goes on further to instruct the Plan Administrator that "**[a]s Plan Administrator, you need to deny her claim for benefits**. You do this by sending her (through her attorney) the attached letter." *Id.* at MISP020. [Emphasis added].

The Plan Administrator responded as follows:

> Thanks Larry. **I'll do as I'm told** and make sure you are copied.

*Id.* at MISP020. [Emphasis added].

Although the e-mail from the Plan Administrator back to Parsons has been inexplicably altered with the deletion of the date and time sent, it is apparent that the Plan Administrator simply printed out and signed Parsons' letter without any change or active consideration, as the Plan Administrator signed the denial on January 30, 2003, one day after Parsons' e-mail. Unlike the situation in *Hensley*, the Plan Administrator did not have input into the denial letter's drafting, was not fully informed of the issues surrounding the benefits decision, did not engage in any meaningful meetings about the denial, and had no conception that he was free to reject the letter and reach a different conclusion. Indeed, the Plan Administrator's glib and unprofessional retort that "**I'll do as I'm told"** is clear and indisputable evidence that the fiduciary role was completely abandoned. Why is that so important here? Simply put, the abandonment of that fiduciary responsibility and the failure of the Plan Administrator to compile a meaningful record, in itself, are sufficient to allow this Court to reverse the denial of benefits in this case. *See Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995) (actions taken in abandonment of fiduciary obligation "presumptively void"); *see also Dytrt v. Mountain State Telephone & Telegraph Co.*, 921 F.2d 889, 895 (9th Cir. 1990) (denial unsupportable on insufficient record of investigation); *see also Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir. 1990) (denial unsupportable on insufficient record of investigation).

Defendant Plan also argues that it could rely on Motorola, Inc.'s denial of benefits because the Plan Administrator had the power to delegate investigatory and decision-making authority to Parsons. Although Ms. Ford disagrees that a plan administrator can fully vest both investigatory and decision-making authority to a person who has a fiduciary responsibility only to the funding source[2] – in this case, Motorola, Inc. – the fact remains that there is no evidence in the record to suggest that the Plan Administrator actually made such a

///

---

[2] Indeed, the Defendant Plan's conclusion in this regard appears contrary to the analysis undertaken by the Ninth Circuit in *Hensley*, *supra.* where it was determined that the plan administrator or committee must engage in a meaningful and independent analysis of a denial of benefits suggested by counsel who also represents the funding source.

7

delegation. Rather, the Plan Administrator appears to have been completely new to his role and that Mr. Parsons simply appointed himself. The fact that Motorola, Inc.'s in-house counsel made the denial decision in this case, upon information of unknown source or origin, is strong evidence – but not the only evidence – that ERISA's fiduciary obligations were entirely abandoned in this case, that *de novo* review is appropriate, and that the underlying decision cannot be sustained.

### B. The Administrative Record Is Insufficient To Sustain The Denial Of Benefits.

This Court has determined that it will base its decision on the limited administrative record present in this case. For all the reasons stated below, the administrative record here cannot support the denial of benefits, whether under a *de novo*, or abuse of discretion, standard.

### III. THE ADMINISTRATIVE RECORD DOES NOT DEMONSTRATE THAT MS. FORD VOLUNTARILY RESIGNED AS DEFINED BY THE PLAN.

The Defendant Plan continues to argue that Ms. Ford resigned. Nothing in the administrative record contains any notice of resignation. Moreover, nothing in the administrative record demonstrates when, where, or under what circumstances this alleged "resignation" took place. The administrative record clearly shows that Ms. Ford's position is that she did not resign her position. In this case, the Defendant Plan's conclusion or position that Ms. Ford resigned certainly cannot be sustained upon *de novo* review, but cannot even be sustained upon abuse of discretion review as there is no "reasonable evidentiary basis" for the conclusion. The Defendant Plan cannot sustain this "resignation" finding simply by baldly, and repeatedly, asserting that it is so.

First and foremost, the Plan Administrator conducted no known investigation and reached no factual findings, other than what he was instructed to do by Motorola, Inc.'s in-house lawyer, Parsons. Second, the administrative record fails to reveal the source or origin of Parsons' information. We do not know, and cannot know from the record, (1) who Parsons spoke to, (2) whether he received his information from any reliable source, or (3)

whether he received his information from any source in particular. Defendant Plan argues that Parsons "conducted a thorough and balanced investigation," but, in reality, we have no idea what Parsons actually did, who he talked to, or whether he even talked to anyone or reviewed anything. Finally, the administrative record ultimately reveals that Ms. Ford did not resign at all, but, correctly so, that she merely stated to her manager that "she **would be resigning** to take a position outside of Motorola." G. Gienko letter, MISP018-19. [Emphasis added]. Under the Plan, this stated intent to resign continues to make the employee eligible for severance benefits:

> Also, current active employees of Motorola who had given advance notice of their intent to voluntarily terminate employment but who are involuntarily terminated due to the reduction in force or restructuring prior to the date of their employment would have voluntarily terminated are Eligible Employees under this Plan.

Again, under *de novo* review, we can see that Ms. Ford is eligible for severance benefits because she did not resign, but, according to the administrative record, only provided "intent" to resign in the future. As argued in the Opening Brief, even under an abuse of discretion standard, Defendant Plan cannot prevail because the Plan never considered this pertinent provision, resulting in a determination that is both "in conflict with the plain language of the plan," and "based on clearly erroneous findings of fact."

**IV.   THE ADMINISTRATIVE RECORD DOES NOT DEMONSTRATE THAT MS. FORD WAS DENIED BENEFITS BECAUSE SHE WAS NOT TERMINATED.**

The Plan Administrator denied benefits based on the sole, erroneous finding and conclusion that Ms. Ford had "resigned" her position. In a shifting explanation, Motorola, Inc.'s Executive Vice President Director of Human Resources added, again without any documentary or witness support whatsoever, that Ms. Ford was not terminated as part of a restructuring or reorganization.

However, on or about July 8, 2002, Plaintiff Jenny Ford was notified by her employer, Motorola, Inc., that it was undergoing "restructuring and reorganization" efforts in the Phoenix area, and as a result, her employment with Motorola was terminated. In accordance with the letter, July 8, 2002 was her last day of active service with Motorola. Ms. Ford was further

1 notified that, unless she had accepted other employment within Motorola, she would, if eligible, 
2 receive an additional Basic Severance Allowance and Supplemental Severance Benefit under 
3 the Motorola, Inc. Involuntary Severance Plan (the "Plan").  Plaintiff was further informed that 
4 if she signed, and did not revoke, a General Release, she "also will receive a Supplemental 
5 Severance Allowance and Supplemental Severance Benefit."

6      In its Responsive Brief, the Defendant Plan criticizes Ms. Ford for not presenting 
7 evidence to the Plan Administrator that her position was eliminated as part of a restructuring and 
8 reorganization effort.  The fact is, Ms. Ford did present that information in the form of the July 
9 8, 2002 letter!  The fact also remains that even though Ms. Ford did present that information for 
10 inclusion in the administrative record, someone, somewhere removed the July 8, 2002 letter 
11 from the record!  This removal of critical information is never explained by Defendant Plan 
12 anywhere in their Responsive Brief.  Instead, the Defendant Plan capitalizes on the fact the 
13 submitted information is deleted from the record, and then criticizes Ms. Ford for not providing 
14 sufficient information in the claims process.  Indeed, in its Responsive Brief, Defendant Plan 
15 states that "[t]he record also demonstrates that Plaintiff has never been informed she would be 
16 involuntarily terminated, much less that she would be terminated because of a RIF." *Responsive* 
17 *Brief,* p. 14, lls. 2-4.  The fact is, Ms. Ford was informed precisely that she was being terminated 
18 based on a restructuring or reorganization.  The only reason the record does not reflect that is 
19 because Defendant Plan chose not include that information in the administrative record, even 
20 though Ms. Ford has provided it for the record.  Defendant Plan not only takes advantage of its 
21 misdeeds, but does not bother to even explain to this Court why the pertinent letter is not 
22 included in the record.  ERISA plans will always prevail in benefits denial situations if 
23 reviewing courts simply excuse or overlook the plan's actions of deleting information that 
24 supports the granting of benefits.

25      The fact remains, Mr. Gienkos' bald assertion that Ms. Ford's position was not 
26 eliminated because of restructuring contains absolutely no factual support or basis in the record. 
27 Absent that support, Mr. Gienko's conclusions cannot support the denial of benefits.  *See* 
28

*Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1123 (9th Cir. 1998); *see also Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir. 1990).

## V. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully request that, under any standard of review, this Court conclude that she is entitled to all severance allowances and benefits that have gone unpaid under the operative Plan.

DATED this 1st day of August, 2005.

                                      SCHLEIER, JELLISON & SCHLEIER, P.C.

                                      s/James M. Jellison
                                          James M. Jellison
                                          Bradley H. Schleier
                                          Attorneys for Plaintiff

Original filed this 1st
day of August, 2005, with:

Clerk of United States District Court
401 West Washington Street
Phoenix, Arizona 85003

A copy mailed the same day to:

Honorable Roger G. Strand
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 622
401 West Washington Street, SPC 57
Phoenix, Arizona 85003

Monica L. Goebel
John B. Nickerson
Steptoe & Johnson
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004
Attorneys for Motorola, Inc.


s/Michelle R. Leach