**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jenny Ford, a single woman, ) | CIV-03-1271-PHX-RGS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Motorola Inc. Involuntary Severance ) | |
| Plan, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The present action arises out of the denial of benefits to Plaintiff Jenny Ford pursuant to Motorola, Inc.'s ("Motorola") Involuntary Severance Plan (the "Plan"). Plaintiff, a former employee of Motorola, alleges that she was deprived of the benefits of the Plan, because the Plan wrongfully determined that the termination of her employment was voluntary.

On November 24, 2003, Plaintiff filed an Amended Complaint containing two counts. Count I alleges that the Plan violated the Employment Retirement Income Security Act ("ERISA") § 502 by improperly denying Plaintiff benefits due under the Plan. Count II alleges that Motorola breached a fiduciary duty owed to Plaintiff under ERISA § 502 by denying Plaintiff's receipt of benefits. Defendants subsequently moved to dismiss Count II of Plaintiff's Amended Complaint. On April 8, 2004, the Court granted Defendants' motion to dismiss, thus, leaving the Plan as the remaining Defendant.

On May 11, 2004, the Plan moved for a protective order to prevent deposition discovery, contending that where, as here, an ERISA plan vests discretionary authority with the plan administrator, the Court's review is confined to a determination of whether the

administrator abused his discretion. Therefore, the Plan argued that any discovery would be irrelevant. Plaintiff then filed a motion to compel discovery and a motion for reconsideration of the Court's Order granting dismissal of Count II.

On March 30, 2005, the Court granted the Plan's motion for protective order, denied Plaintiff's motion to compel, and denied Plaintiff's motion for reconsideration. In so ordering, the Court concluded that its review of the Administrator's decision is for an abuse of discretion and that "any discovery is limited to the contents of the administrative record."

On December 12, 2005, the Court heard oral argument on the parties' trial memoranda. On November 30, 2006, Plaintiff submitted her supplemental trial brief addressing the supervening change in controlling law regarding the standard of review applicable in ERISA cases, as expressed in Abatie v. Alta Health & Life Insurance Co., 458 F.3d 955 (9th Cir. 2006). Defendant submitted its supplemental response regarding the same on December 18, 2006. After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

## BACKGROUND[1]

The Plan is an unfunded welfare benefit plan governed by ERISA. (See Pl.'s Opening Trial Brief Ex. C at MISP001.) The purpose of the Plan is to provide benefits in connection with actions constituting reductions in force ("RIF") and other business restructuring as determined by the Plan Administrator in his discretion. (See id.)

The Plan is available only to "Eligible Employees," which the Plan defines as employees who are involuntarily terminated as a result of a RIF or restructuring. (See id. at MISP002.) The Plan is also available to current active employees who have given advance notice of their intent to voluntarily terminate employment but who are involuntarily terminated due to a RIF or restructuring prior to the date their employment would have voluntarily terminated. (See id.)

---

[1] The factual background is derived solely from the administrative record produced in its entirety in Plaintiff's Opening Trial Brief – Exhibit C at MISP001-MISP023.

1    The Plan is not available to "Ineligible Employees," which the Plan defines as
2 employees who are not involuntarily terminated as a result of a RIF or restructuring. (See
3 id.) Ineligible Employees include those employees who are terminated for any other reason,
4 including, but not limited to, resignation. (See id.)

5    The Plan is administered by the Plan Administrator who is responsible for general
6 administration and management of the Plan. (See id. at MISP008.) The Plan vests the
7 Administrator with sole discretionary power to interpret, construe, and apply the Plan,
8 including the making of factual determinations regarding a person's eligibility to participate
9 in and/or receive benefits pursuant to the Plan. (See id. at MISP008-MISP009.)
10 Additionally, the Plan Administrator may (i) appoint individuals to assist in any function, and
11 generally to perform all other acts necessary in administering the Plan, and (ii) seek such
12 expert advice as deemed necessary with respect to the Plan. (See id. at MISP009.) The Plan
13 Administrator shall be entitled to rely upon the information and advice furnished by such
14 individuals and experts. (See id.)

15    On November 15, 2002, following her termination from employment, Plaintiff
16 submitted a notice of claim for benefits pursuant to the Plan. (See id. at MISP011.) In the
17 notice, Plaintiff stated that in a letter dated July 8, 2002, Motorola informed her that she was
18 entitled to severance and benefits under the Plan. (See id.) Plaintiff alleged that Motorola
19 also advised her that she was entitled to supplemental severance and benefits for signing a
20 General Release. (See id.)

21    Motorola in-house attorney Larry M. Parsons subsequently investigated Plaintiff's
22 claim and submitted an e-mail to Ron Miller, the Plan Administrator, recommending that
23 Plaintiff's claim be denied. (See id. at MISP020.) Mr. Parsons' investigation revealed that
24 Plaintiff had resigned from her employment to take a job at Intel and that she had been
25 mistakenly identified as an eligible employee during her exit interview – conducted by a
26 Motorola Human Resources ("HR") representative who did not have complete information
27 about Plaintiff's situation. (See id.) Specifically, Plaintiff was an engineer located in Tempe,
28 Arizona, but her manager, Kathy Downer worked in Austin, Texas. (See id.) Ms. Downer

1 asked HR representative Andy Palma to conduct Plaintiff's exit interview in Tempe. (See
2 id.) Mr. Palma, however, was on vacation and asked HR representative Jay Thompson to
3 conduct the interview. (See id.)

4 Mr. Parsons learned that at the time Mr. Thompson conducted Plaintiff's exit
5 interview, he was conducting a large number of exit interviews with employees from a
6 facility closing in Mesa, Arizona. (See id.) Mr. Thompson failed to realize that Plaintiff
7 worked in Tempe, and assumed that she was exiting as part of the Mesa closure. (See id.)
8 Mr. Thompson asked Plaintiff if she qualified for benefits under a voluntary severance plan
9 or the Plan (at issue before the Court). (See id.) Plaintiff responded that she did not apply
10 for voluntary severance and did not know if she qualified for Plan benefits, but that she
11 would like to receive benefits under the Plan. (See id.) Mr. Thompson provided her with a
12 copy of the Plan's Summary Plan Description and told her that he would follow up with her.
13 (See id.)

14 Mr. Parsons found that when Mr. Palma returned from vacation, he called Plaintiff to
15 advise her that she had resigned from her position, that her job was not eliminated, and that
16 Motorola had to find a replacement for her. (See id.) Mr. Palma also explained that she was
17 not eligible to receive benefits under the Plan. (See id.) Plaintiff's manager, Ms. Downer,
18 also provided this same information to Plaintiff. (See id.)

19 Based on these findings, Mr. Parsons recommended to Mr. Miller: "As Plan
20 Administrator, you need to deny [Plaintiff's] claim for benefits." (Id.) Mr. Parsons drafted
21 a letter responding to Plaintiff's claim, setting forth the basis for the findings and
22 determination, and attached the draft letter to his e-mail. (See id. at MISP021-MISP023.)

23 Mr. Miller adopted, signed, and sent the letter to Plaintiff. (See id. at MISP013-
24 MISP015.) In the letter, Mr. Miller notified Plaintiff of the decision to deny her claim for
25 benefits. (See id.) He explained that because Plaintiff resigned from her employment at
26 Motorola to accept a job at another company, she was not involuntarily terminated and, by
27 definition, an Ineligible Employee. (See id.) Mr. Miller confirmed that Plaintiff was never
28 notified that her employment would be terminated as a result of a RIF, and concluded that

1  although she was mistakenly given a copy of the Summary Plan Description at her exit
2  interview, that did not change the reason for her separation from employment.  (<u>See</u> <u>id.</u>)

3  Mr. Miller advised that the Plan gave Plaintiff the right to submit an appeal of the
4  determination to the Motorola Director of Human Resources and outlined the appeal process.
5  (<u>See</u> <u>id.</u>)  Mr. Miller encouraged Plaintiff to submit "any additional information or documents
6  which indicate that any of the information [in the Plan Administrator's denial letter] is
7  incorrect in any way ... ."  (<u>Id.</u>)

8  On February 6, 2003, Plaintiff appealed the Plan Administrator's decision.  (<u>See</u> <u>id.</u>
9  at MISP016-MISP017.)  In her appeal, Plaintiff repeated her claim that she was an Eligible
10 Employee and asserted that she was entitled to benefits pursuant to the Plan because Mr.
11 Thompson gave her Plan documents at her exit interview.  (<u>See</u> <u>id.</u>)  Despite the
12 Administrator's invitation to do so, Plaintiff failed to submit any additional documents or
13 information indicating that the Administrator's decision was based on incorrect information.
14 (<u>See</u> <u>id.</u>)

15 On March 30, 2003, Motorola's Executive Vice President and Director of Human
16 Resources Glenn Gienko denied Plaintiff's appeal.  (<u>See</u> <u>id.</u> at MISP018-MISP019.)  In his
17 decision, Mr. Gienko stated in pertinent part:

18 > To be eligible for the Plan benefits, [Plaintiff] would have had to have been notified by her manager that she was being involuntarily separated as part of
19 > a [RIF] or restructuring.  This simply was not the case.  [Plaintiff's] manager has verified that [Plaintiff] informed her by phone two weeks' [sic] prior to her
20 > exit that she would be resigning to take a position outside of Motorola. Because [Plaintiff's] manager is located in Austin, she asked a Human
21 > Resources representative in Tempe to perform the exit interview.  The Tempe Human Resources representative did not have complete information about
22 > [Plaintiff's] situation and mistakenly assumed that her position was being eliminated as part of a [RIF].  Although [Plaintiff] was given some standard
23 > paperwork presented to employees leaving under the Plan, that fact does not mean she was selected for termination or that her job was being eliminated.
24 > On the contrary, her manager informed me that she had to backfill [Plaintiff's] position in order to complete the assignment she was working on at the time
25 > she resigned.

26 (<u>Id.</u> at MISP018.)

27
28 **STANDARD OF REVIEW**

- 5 -

1  "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed
2  under a *de novo* standard unless the benefit plan gives the administrator or fiduciary
3  discretionary authority to determine eligibility for benefits or to construe the terms of the
4  plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the plan
5  confers discretion on the plan administrator to determine eligibility for benefits, courts
6  review the denial of benefits for abuse of discretion. See id.  However, "if a benefit plan
7  gives discretion to an administrator or fiduciary who is operating under a conflict of interest,
8  that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of
9  discretion.' Restatement (Second) of Trusts § 187, Comment d (1959)." Id.

10  The plain terms of the Plan vest the Administrator with sole discretionary power to
11  interpret, construe, and apply the Plan, including the making of factual determinations
12  regarding a person's eligibility to participate in and/or receive benefits pursuant to the Plan.
13  (See Pl.'s Opening Trial Brief Ex. C at MISP008-MISP009.)  As such, the Court finds that
14  the language set forth in the Plan unambiguously confers discretion on the Administrator to
15  interpret the Plan and make benefit determinations, thus triggering an abuse of discretion
16  standard of review.

17  Despite the Plan's granting of discretionary authority to the Administrator, Plaintiff
18  argues for a *de novo* review of the decision to deny benefits asserting that an inherent conflict
19  of interest (i.e., when an insurer acts as both the plan administrator and the funding source
20  for benefits) influenced the decision-making process. In her supplemental trial brief, Plaintiff
21  maintains her position for a *de novo* review (as previously asserted in her opening trial brief),
22  but departs from her reliance on the principles originally set forth in Atwood v. Newmont
23  Gold Co., 45 F.3d 1317 (9th Cir. 1995).

24  Among Plaintiff's litany of alleged facts in support of a *de novo* review, she contends
25  that the Plan Administrator simply adopted the initial benefits determination made by the
26  Motorola in-house attorney – thereby failing to utilize any discretion in determining
27  eligibility for benefits.  Plaintiff states that the administrative record fails to contain any
28  evidence of an investigation, and asserts that the reasons given for the denial of the initial

1  claim and the denial on appeal are inconsistent. Additionally, Plaintiff alleges that in
2  denying her claim, the Plan Administrator ignored the Plan provision stating that an
3  employee who announces her voluntary resignation, but is involuntarily terminated as a result
4  of a RIF or restructuring before her employment ends, is eligible to receive benefits.

5  In Atwood, the Ninth Circuit held that, if a plan participant could show "material,
6  probative evidence, beyond the mere fact of the apparent conflict, tending to show that the
7  fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the
8  beneficiary," then the burden shifted to the administrator to prove that the conflict of interest
9  did not affect the administrator's decision to deny benefits. Id. at 1323. If the administrator
10 failed to carry that burden, a district court would review the decision *de novo*. See id.

11 The Ninth Circuit recently overruled the Atwood approach to conflicts of interest and
12 adopted an approach to ERISA cases that "more accurately reflects the Supreme Court's
13 instructions in *Firestone*." Abatie, 458 F.3d at 967. In Abatie, the Ninth Circuit clarified –
14 "*Firestone* ... require[s] abuse of discretion review whenever an ERISA plan grants discretion
15 to the plan administrator, but a review informed by the nature, extent, and effect on the
16 decision-making process of any conflict of interest that may appear in the record." Id. This
17 standard applies to the kind of inherent conflict that exists when an insurer acts as both the
18 plan administrator and the funding source for benefits. See id. As the court explained,

> [a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. ...
>
> A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it. The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

1  Id. at 968-69 (citations omitted).

2  The Ninth Circuit stated that this standard, which no longer requires a burden-shifting
3  analysis, provides that "plaintiffs will have the benefit of an abuse of discretion review that
4  always considers the inherent conflict when a plan administrator is also the fiduciary, even
5  in the absence of 'smoking gun' evidence of conflict." Id. at 969.

6  In light of the Ninth Circuit's holding in Abatie, Plaintiff's assertion for a *de novo*
7  review based on an inherent conflict of interest is no longer applicable. The Court will,
8  however, address Plaintiff's arguments in determining how much weight to give the conflict
9  under the abuse of discretion standard.

10  Beyond the fact that the Plan is both funded and administered by the same party, the
11  Court finds that there is little evidence warranting great skepticism of the decision denying
12  benefits. First, regarding Plaintiff's chief contention – that Motorola in-house attorney Mr.
13  Parsons made the initial benefits determination, not the Plan Administrator – pursuant to
14  ERISA and the Plan, Mr. Parsons acted as a designee with the discretionary authority to
15  investigate Plaintiff's claim and determine her eligibility to receive benefits. (See Pl.'s
16  Opening Trial Brief Ex. C at MISP020.) The Plan Administrator – vested by the Plan with
17  the authority to delegate the investigation and determination of benefits – adopted Mr.
18  Parsons' investigation and determination. (See id. at MISP013-MISP015.)

19  ERISA specifically permits a plan administrator to designate persons to carry out their
20  discretionary authority. See 29 U.S.C. § 1105(c)(1) (plan may "provide for procedures ... for
21  named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary
22  responsibilities ... under the plan"). Furthermore, nothing set forth in ERISA prohibits plan
23  administrators from relying on information provided by and following the recommendations
24  of either in-house or outside attorneys for the employer who sponsors the plan. See, e.g.,
25  Bidwill v. Garvey, 943 F.2d 498, 509 (4th Cir. 1991) ("Nothing in ERISA explicitly requires
26  that outside counsel invariably be consulted."); Aschenbaugh v. Crucible Inc., 854 F.2d 1516,
27  1531-32 (3rd Cir. 1988) (holding that a plan fiduciaries' reliance on in-house counsel to aid
28

- 8 -

in interpreting and administering the plan, rather than hiring independent counsel, was not a violation of ERISA). As the Aschenbaugh court reasoned:

> [ERISA] 29 U.S.C. § 1108(c)(3) specifically allows officers and others connected with the employer to serve as plan fiduciaries; given that Congress clearly contemplated administration of ERISA plans by employers, we think that if it had intended to impose a requirement that plan administrators consult outside counsel in the course of their administration, it would have made this intention clear in the statute.

Id. at 1531-32. Accordingly, the Court finds Plaintiff's contention unpersuasive.

The record also fails to contain "any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." Abatie, 458 F.3d at 968-69. The absence of such evidence weighs in favor of the Court's reviewing the decision to deny benefits with a low level of skepticism. See id.

Other factors that would lead the Court to weigh the conflict of interest more heavily are likewise missing. For example, the record fails to reveal a pattern of conduct in which the Administrator has "repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Id. Further, there is no indication that the administrative record fails to demonstrate an investigation, or that the reasons for the denial of benefits, initially and on review, are inconsistent. See id. To the contrary – as established by Mr. Parsons' e-mail addressed to the Plan Administrator, the Plan Administrator's denial letter, and the denial on review – the Court finds evidence of an investigation and that the reasons for denial have consistently been based on the fact that Plaintiff resigned from her employment. In the initial denial letter, the Administrator explained that because Plaintiff resigned from her employment at Motorola to accept a job at another company, she was not involuntarily terminated and, by definition, an Ineligible Employee. (See Pl.'s Opening Trial Brief Ex. C at MISP013-MISP015.) Although Plaintiff was mistakenly given a copy of the Summary Plan Description at her exit interview, that did not change the facts underlying her departure or the reason for her separation from employment. (See id.) On appeal, Motorola's Executive Vice President and Director of Human Resources affirmed the basis for the initial denial –

1  that Plaintiff resigned from her employment – after verifying with Plaintiff's manager that
2  Plaintiff informed her by phone two weeks prior to her exit interview that she would be
3  resigning to take a position outside of Motorola.  (See id. at MISP018.)
4  Nor can Plaintiff support her allegation that in denying her claim, the Administrator
5  ignored the Plan provision stating that an employee who announces her voluntary
6  resignation, but is involuntarily terminated as a result of a RIF or restructuring before her
7  employment ends, is eligible to receive benefits.  The initial denial letter defines Eligible
8  Employees "as those employees of Motorola whose employment is involuntarily terminated
9  as a result of a [RIF]," and defines Ineligible Employees to include those employees who
10 resign from their employment.  (Id. at MISP013-MISP015.)  The Administrator concluded
11 and the Executive Vice President and Director of Human Resources affirmed that Plaintiff's
12 employment ended because she resigned, not because she was involuntarily terminated.  (See
13 id.; at MISP018.)  Plaintiff was mistakenly given a copy of the Summary Plan Description
14 at her exit interview; she was never notified by her manager that her employment would be
15 terminated as a result of a RIF.  (See id.)  By definition, therefore, Plaintiff was an Ineligible
16 Employee and could not be shoehorned into the Plan's Eligible Employee provision.
17 In addition to its discussion regarding conflicts of interest, the Abatie court also
18 discussed the concerns that arise when the administrator fails to adhere to the procedural
19 requirements set forth in ERISA and the plan.  The court explained that "a procedural
20 irregularity in processing an ERISA claim does not usually justify de novo review."  Id. at
21 972. Rather, "a procedural irregularity, like a conflict of interest, is a matter to be weighed
22 in deciding whether an administrator's decision was an abuse of discretion."  Id.  Only
23 "[w]hen an administrator engages in wholesale and flagrant violations of the procedural
24 requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan
25 as well," is review *de novo*.  Id. at 971.
26 To the extent there were any procedural violations by the Administrator as alleged by
27 Plaintiff in the previous discussion regarding the inherent conflict, the Court finds that the
28 Administrator's conduct does not constitute wholesale and flagrant violations of the

1 procedural requirements of ERISA. The alleged conduct was neither flagrant nor taken in
2 utter disregard of the underlying purpose of the Plan, and is therefore insufficient to compel
3 a *de novo* review of the record.

4     In sum, in its review of the inherent conflict of interest and the alleged procedural
5 irregularities, the Court finds no basis from these facts to view the Administrator's decision
6 with a degree of skepticism that would be significantly more scrutinizing than an ordinary
7 abuse of discretion.[2]

## DISCUSSION

9     An ERISA plan administrator abuses his discretion if (1) he renders a decision without
10 any explanation, (2) he construes provisions of the plan in a way that conflicts with the plain
11 language of the plan, or (3) he relies on clearly erroneous findings of fact in making benefit
12 determinations. See Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472-73 (9th Cir.
13 1993). On this record, there is no evidence that any of these factors are present.

14     In alleging that the Plan Administrator abused his discretion, Plaintiff reasserts several
15 of her arguments relating to the inherent conflict of interest and the alleged procedural
16 irregularities. Specifically, Plaintiff claims that the Plan Administrator abused his discretion
17 by (1) deferring the benefits determination to Motorola's in-house attorney thereby utilizing
18 no discretion in determining eligibility for benefits; (2) failing to perform any investigation
19 and develop an administrative record; and (3) ignoring the Plan provision stating that an
20 employee who announces her voluntary resignation, but is involuntarily terminated as a result
21 of a RIF or restructuring before her employment ends, is eligible to receive benefits.

---

[2] In her supplemental trial brief, Plaintiff requests the opportunity to engage in additional discovery in light of Abatie. Abatie contemplates that a district court may, in its discretion, consider evidence outside of the administrative record (1) to decide the nature, extent, and effect on the decision-making process of any conflict of interest, see id. at 970, and (2) when a plan administrator has failed to follow a procedural requirement of ERISA. See id. at 972-73. The Court, having considered the inherent conflict of interest and the procedural irregularities alleged in Plaintiff's memoranda, finds that additional discovery is not necessary. Pursuant to Abatie, the Court will weigh the inherent conflict and alleged procedural irregularities as factors in determining whether there is an abuse of discretion. This determination will be limited to the evidence set forth in the administrative record.

In light of its review of the record and the parties' memoranda, and having weighed the inherent conflict of interest and alleged procedural irregularities as factors in its abuse of discretion review as required under <u>Abatie</u>, the Court finds Plaintiff's claims unavailing.

Pursuant to ERISA and the Plan, and as previously stated, Mr. Parsons acted as a designee with the authority to investigate Plaintiff's claim and determine her eligibility to receive benefits. The Plan Administrator, vested by the Plan with the authority to delegate the investigation and determination of benefits, adopted Mr. Parsons' investigation and determination, and sent a letter to Plaintiff fully explaining the decision to deny her claim for benefits. The facts and rationale for the decision were further explained to Plaintiff in response to her appeal.

The Court also finds clear evidence of an investigation and development of the record as demonstrated by Mr. Parsons' e-mail addressed to the Plan Administrator, the Plan Administrator's denial letter, and Motorola's Executive Vice President and Director of Human Resources' denial on review. Further, the weight of evidence that Plaintiff resigned from her employment, and the absence of evidence establishing that she was involuntarily terminated, much less that she had ever been notified by her manager that her employment would be terminated as a result of a RIF, negates any contention that the Administrator neglected any of the Plan provisions or relied on clearly erroneous findings of fact.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plan did not abuse its discretion in denying Plaintiff's claim for benefits. Accordingly,

**IT IS ORDERED** that judgment shall be entered in favor of Defendant.

DATED this 17th day of January, 2007.

_____
Roger G. Strand
Senior United States District Judge